IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

```
DALE KINGSBURY,                )
                              )
                 Plaintiff,    )
                              )
vs.                           )        Case No. 08-4014-JAR
                              )
MICHAEL J. ASTRUE,            )
Commissioner of               )
Social Security,              )
                              )
                 Defendant.    )
_____)
```

RECOMMENDATION AND REPORT


This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties and has been
referred to this court for a recommendation and report.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the

1

correct legal standards.  <u>Glenn v. Shalala</u>, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by
such evidence that a reasonable mind might accept to support the
conclusion.  The determination of whether substantial evidence
supports the Commissioner's decision is not simply a quantitative
exercise, for evidence is not substantial if it is overwhelmed by
other evidence or if it really constitutes mere conclusion.  <u>Ray
v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court
is not to reweigh the evidence, the findings of the Commissioner
will not be mechanically accepted.  Nor will the findings be
affirmed by isolating facts and labeling them substantial
evidence, as the court must scrutinize the entire record in
determining whether the Commissioner's conclusions are rational.
<u>Graham v. Sullivan</u>, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The
court should examine the record as a whole, including whatever in
the record fairly detracts from the weight of the Commissioner's
decision and, on that basis, determine if the substantiality of
the evidence test has been met.  <u>Glenn</u>, 21 F.3d at 984.

The Social Security Act provides that an individual shall be
determined to be under a disability only if the claimant can
establish that they have a physical or mental impairment expected
to result in death or last for a continuous period of twelve
months which prevents the claimant from engaging in substantial

gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not

to be disabled.  If the claimant survives step four, the fifth
and final step requires the agency to consider vocational factors
(the claimant's age, education, and past work experience) and to
determine whether the claimant is capable of performing other
jobs existing in significant numbers in the national economy.
Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of
the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993).
At step five, the burden shifts to the Commissioner to show that
the claimant can perform other work that exists in the national
economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987
F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this
burden if the decision is supported by substantial evidence.
Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will
assess the claimant's residual functional capacity (RFC).  This
RFC assessment is used to evaluate the claim at both step four
and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

## II.  History of case

On July 11, 2003, on plaintiff's initial application for
disability, administrative law judge (ALJ) Jack R. Reed issued
his 1st decision, finding that plaintiff was not disabled (R. at
61-78).  On July 20, 2004, on plaintiff's second application for
disability, a disability determination was made by the state

agency that plaintiff was disabled as of July 12, 2003 (R. at 88). On March 21, 2005, the Appeals Council set aside the initial ALJ decision and the state agency determination, consolidated the two applications by plaintiff, and remanded the case for further proceedings (R. at 90-95).

ALJ Jack R. Reed issued his 2nd decision on March 23, 2006 (R. at 28-55). Plaintiff was found to be insured through the date of the decision (R. at 53). Plaintiff alleged an onset date of disability of July 30, 2000 (R. at 28). At step one, the ALJ found that plaintiff had engaged in substantial gainful activity from July-December 2001, but did not engage in substantial gainful activity from the alleged onset date through June 2001, or subsequent to December 2001 (R. at 53).

At step two, the ALJ found that plaintiff had numerous impairments, and that the combination of these impairments was severe (R. at 29, 53). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or equals a listed impairment (R. at 29-30, 53). After establishing plaintiff's RFC (R. at 50, 53-54), the ALJ found at step four that plaintiff could not perform past relevant work (R. at 51, 54). At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 52-53, 54). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 53, 54).

**III.  Did the ALJ err by not considering whether plaintiff met or equaled listed impairment 12.05C?**

Plaintiff has the burden at step three of demonstrating, through medical evidence, that his/her impairments meet all of the specified medical criteria contained in a particular listing. Riddle v. Halter, 10 Fed. Appx. 665, 667 (10th Cir. March 22, 2001).  An impairment that manifests only some of those criteria, no matter how severely, does not qualify.  Sullivan v. Zebley, 493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990).  Because the listed impairments, if met, operate to cut off further inquiry, they should not be read expansively.  Caviness v. Apfel, 4 F. Supp.2d 813, 818 (S.D. Ind. 1998).

The ALJ is required to discuss the evidence and explain why he found that the plaintiff was not disabled at step three.  This court should not properly engage in the task of weighing evidence in disability cases.  The court's function is only to review the Commissioner's decision to determine whether his factual findings are supported by substantial evidence and whether he applied the correct legal standards.  In the absence of ALJ findings supported by specific weighing of the evidence, the court cannot assess whether relevant evidence adequately supports the ALJ's conclusion that the plaintiff did not meet or equal any listed impairment.  Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996).

Plaintiff argues that his impairments meet or equal listed impairment 12.05C. Listed impairment 12.05C is as follows:

> 12.05 *Mental retardation:* Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied....
>       *     *     *
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R., Pt. 404, Subpt. P., App. 1 at 479 (2008 at 508).  The regulations state as follows:

> The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing...For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a "severe" impairment(s), as defined in §§ 404.1520(c) and 416.920(c). If the additional impairment(s) does not cause limitations that are "severe" as defined in §§ 404.1520(c) and 416.920(c), we will not find that the additional impairment(s)

7

> imposes "an additional and significant
> work-related limitation of function," even if
> you are unable to do your past work because
> of the unique features of that work.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A) (2008 at 501).

The ALJ did not discuss in his decision whether plaintiff's impairment met or equaled listed impairment 12.05C.  The ALJ did reference IQ testing by Dr. Mintz on March 3, 1991, which found that plaintiff had a full-scale IQ of 75, a verbal IQ of 79, and a performance IQ of 74 (R. at 33, 452).  The ALJ also referenced a psychological evaluation by Dr. Barnett on June 6, 2005, including a statement by Dr. Barnett that plaintiff had a borderline IQ, but failed to mention the IQ test score results from that evaluation, which indicated that plaintiff had a full-scale IQ of 74, a verbal IQ of 82, and a performance IQ of 69 (R. at 42, 849, 853).

Plaintiff argues that, in light of the IQ scores, and the existence of other severe impairments, the ALJ erred by failing to consider whether plaintiff met listed impairment 12.05C.  To satisfy listed impairment 12.05C, plaintiff must show: (1) evidence of onset of mental retardation before age 22, (2) a valid verbal, performance, or full scale IQ of 60-70,[1] and (3) another severe impairment.  <u>Soverns v. Astrue</u>, 501 F. Supp.2d

---

[1]When verbal, performance, and full scale IQ scores are provided, the lowest score is used in conjunction with 12.05. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)(6)(c) (2008 at 504-505).

1311, 1320 (D. Kan. 2007).

The record provides evidence of a performance IQ score of 69.  20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00(D)(6)(a) states the following concerning intelligence tests:

> The results of standardized intelligence tests may provide data that help verify the presence of mental retardation or organic mental disorder, as well as the extent of any compromise in cognitive functioning. **However, since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation.**

20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00(D)(6)(a) (2008 at 504)(emphasis added).  Dr. Barnett stated that plaintiff appeared to be "mildly intellectually limited" and had an "unusual" IQ test score profile, with the verbal IQ significantly higher than the performance IQ (R. at 849); at a later point, he noted that plaintiff had a "borderline IQ" (R. at 853).  However, Dr. Barnett never commented on whether the verbal IQ score was considered valid or consistent with the developmental history and the degree of functional limitation.[2]  Dr. Barnett offered no opinion as to whether plaintiff's impairment met or equaled

---

[2]Although Dr. Barnett noted that the MMPI scores should be interpreted with caution due to the elevated "F" score, which suggests either defensiveness or an attempt to magnify his complaints (R. at 848-849), Dr. Barnett gave no such cautionary language concerning the results of the IQ test.

listed impairment 12.05C, or any of the criterion of that listed
impairment.

The record also shows that the ALJ found that plaintiff had
numerous physical and mental limitations, and that the
combination of these impairments was severe (R. at 29).  Thus,
there is evidence of another severe impairment.

In regards to the issue of onset of retardation before age
22, the Fourth, Eighth, and Eleventh Circuits have held that in
the absence of any evidence of a change in a claimant's
intelligence functioning, it must be assumed that the claimant's
IQ had remained relatively constant.  Thus, an IQ score after age
22 creates a rebuttable presumption of a claimant's IQ before age
22.  Luckey v. Dep't of Health & Human Serv., 890 F.2d 666, 668
(4th Cir. 1989); Sird v. Chater, 105 F.3d 401, 402 n.4 (8th Cir.
1997); Hodges v. Barnhart, 276 F.3d 1265, 1268-69 (11th Cir.
2001).  The Tenth Circuit has not addressed the issue of whether
mental retardation may be presumed to have manifested during the
developmental period.  However, it has noted that circuit courts
have liberally construed the early manifestation requirement
whereby a claimant is not required to affirmatively prove that he
was mentally retarded prior to reaching the age of twenty two so
long as there was no evidence that claimant's IQ had changed.
McKown v. Shalala, 1993 WL 335788, at *3 (10th Cir. Aug. 26,
1993).  Furthermore, the ALJ stated that he gave "considerable

weight" to the opinions of Dr. Schloesser (R. at 49).  However, the ALJ did not mention that Dr. Schloesser marked the box under listed impairment 12.05 on the PRTF form indicating that plaintiff had significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22), or pervasive developmental disorder (R. at 469, 473).

In this case, there is a performance IQ score of 74 on March 3, 1991 (when plaintiff was 31 years old) and a performance IQ score of 69 on June 6, 2005 (just before plaintiff's 46th birthday) (R. at 452, 849).  When there are conflicting IQ scores, the ALJ is required to determine which more accurately reflects plaintiff's mental capabilities.  Gleason v. Apfel, 1999 WL 714172 at *4 (D. Kan. Sept. 1, 1999).  The ALJ only referenced the earlier performance IQ score of 74, and did not even mention the more recent performance IQ test score of 69.  Thus, the ALJ made no determination of which performance IQ test score more accurately reflected plaintiff's mental capabilities.

Thus, plaintiff points to record evidence sufficient to suggest a reasonable possibility that his condition meets or equals listed impairment 12.05C.  On these facts, it is the Commissioner's responsibility to develop the record, consider whether plaintiff's condition meets or equals the listing, and explain the rationale for his decision.  Soverns, 501 F. Supp.2d

11

at 1321.  When a claimant presents evidence of an IQ of 70 or less and evidence of another severe impairment, it is error for the ALJ not to discuss whether plaintiff's impairment meets or equals listed impairment 12.05C.  <u>Carpenter v. Astrue</u>, 537 F.3d 1264, 1266-68 (10th Cir. 2008).  Furthermore, at no point in his decision does the ALJ make findings to render this error harmless by unambiguously negating plaintiff's claim to satisfy the elements of 12.05C.  <u>Carpenter</u>, 537 F.3d at 1268; <u>see</u> <u>Dye v. Barnhart</u>, 180 Fed. Appx. 27, 30-31 (10th Cir. May 9, 2006)(there are no findings by the ALJ that conclusively negate the possibility that claimant can meet the other listing requirements).

Defendant argues that the evidence does not support a finding that plaintiff's impairments do not meet or equal 12.05C (Doc. 14 at 5-7).  However, none of these arguments are contained in the ALJ's decision.  The ALJ never discussed 12.05C or provided any explanation for why the evidence did not support plaintiff's assertion that plaintiff's impairments met or equaled 12.05C.  An ALJ's decision should be evaluated based solely on the reasons stated in the decision.  <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1084 (10th Cir. 2004).  A decision cannot be affirmed on the basis of appellate counsel's <u>post hoc</u> rationalizations for agency action.  <u>Knipe v. Heckler</u>, 755 F.2d 141, 149 n.16 (10th Cir. 1985).  A reviewing court may not create <u>post hoc</u>

rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision.  Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005).  By considering legal or evidentiary matters not considered by the ALJ, a court risks violating the general rule against post hoc justification of administrative action. Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004).  If plaintiff does not meet the criteria of listed impairment 12.05C, the ALJ must make that determination in the first instance.  Peck v. Barnhart, 214 Fed. Appx. 730, 736 (10th Cir. Dec. 26, 2006). Therefore, this case should be remanded in order for the ALJ to evaluate whether plaintiff's impairment(s) meets or equals listed impairment 12.05C.

**IV.  Did the ALJ err in making his RFC findings?**

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence."  The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.  The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ.  20 C.F.R. § 402.35(b)(1);

Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).  When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence.  See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003).  The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003).  It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions.  Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995).  When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination.  Such bare conclusions are beyond meaningful judicial review.  Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

    The ALJ made the following RFC findings:

The Administrative Law Judge concludes that
the evidence supports a finding that claimant
retains the residual functional capacity to
lift at least 20 pounds occasionally and 10
pounds frequently. He is precluded from job
tasks requiring prolonged standing, but is
capable of standing and walking for at least
15-20 minutes at a time and at least 2-4
hours total throughout the course of a normal
workday. He retains no significant limitation
with prolonged sitting and is capable of such
for at least 6 hours total throughout the
course of a normal 8-hour workday with normal
breaks. Claimant retains no significant
limitation of ability to use his bilateral
upper extremities and hands to perform basic
manipulative work-related activities
including reaching, handling, fingering, and
feeling. He is capable of postural work
activities including crouching, balancing,
stooping, climbing, crawling, and kneeling on
at least an occasional basis. He retains very
good visual functioning and full visual field
in his right eye; however, he is essentially
blind in the left eye and is precluded from
job tasks requiring binocular vision, but he
otherwise retains no communicative limitation
regarding his ability to hear, speak, taste,
or smell. Secondary to his borderline
intellect and other combined mental
impairments, claimant is precluded from
detailed or complex job tasks and restricted
to simple, less mentally demanding job tasks,
but otherwise retains no significant
limitation of ability to understand, carry
out, and remember simple instructions; use
simple judgement; respond appropriately to
supervision, coworkers, and usual work
situations in such a work setting; or deal
with routine changes in such a work setting.

(R. at 50-51).  Prior to making his RFC findings, the ALJ

provided a detailed summary of the voluminous medical records in

this case (R. at 32-49).  However, in violation of SSR 96-8p, the

ALJ did not include a narrative discussion describing how the

evidence supported any of his RFC findings.  The ALJ did not cite
to any medical evidence in support of his RFC findings.  It is
insufficient for the ALJ to only generally discuss the evidence,
but to fail to relate that evidence to his conclusions.  <u>Cruse</u>,
49 F.3d at 618.

In the case of <u>Kency v. Barnhart</u>, 2004 WL 5542829 at *4,
Case No. 03-1190-MLB (D. Kan. Nov. 16, 2004), the record was
devoid of any identifiable discussion explaining how the ALJ
arrived at his RFC conclusions from the evidence or how the
evidence supported his conclusions.  <u>Kency</u>, (Doc. 21 at 5).  In
<u>Kency</u>, the court held as follows:

> ...the ALJ simply listed all the evidence
> contained in the record and then set forth
> his conclusion without explaining the
> inconsistencies and ambiguities contained in
> the opinions. He did not connect the dots, so
> to speak, as is required by S.S.R. 96-8p. It
> may well be that upon remand, the ALJ will
> reach the same conclusion. Nevertheless,
> S.S.R. 96-8p is defendant's requirement and
> ALJs presumably are the experts whose
> responsibility it is to know and follow
> defendant's requirements...
>           *      *      *
> Most important, the ALJ must explain how the
> decision was reached. When an ALJ merely
> summarizes the facts, notes that he has
> considered all of the facts, and then
> announces his decision, there is nothing for
> the court to review. The court cannot know
> how the ALJ analyzed the evidence. When the
> evidence is contradictory or ambiguous, as it
> is in most cases, the court cannot know which
> evidence was given what weight, or how the
> ambiguities were resolved. Therefore, to
> determine whether substantial evidence
> supports the conclusion, the court would have

16

> to reweigh the evidence. Since that option is
> precluded by law, the court can only remand
> to the defendant for a proper explanation of
> how the evidence was weighed and ambiguities
> resolved.

<u>Kency</u>, (D. Kan. Nov. 16, 2004, Doc. 21 at 7, 9); <u>see also</u> <u>Wolfe</u>
<u>v. Barnhart</u>, 2006 WL 2264006 at *2, Case No. 05-1028-JTM (Doc. 25
at 3, July 25, 2006)("It is insufficient for the ALJ to generally
discuss the evidence but fail to relate the evidence to his
conclusions").  In <u>Kency</u>, the court held that it was not at all
clear to the court how the RFC, as a whole, was derived.  (Doc.
21 at 8).  <u>Munday v. Astrue</u>, 535 F. Supp.2d 1189, 1197 (D. Kan.
2007).

As in <u>Kency</u> and <u>Munday</u>, it is not at all clear to the court
how the RFC, as a whole, was derived in this case (Kingsbury).
For example, the ALJ stated that he gave "significant weight" to
the opinions of Dr. Chernoff, who testified on June 17, 2003 (R.
at 49).  Dr. Chernoff testified that plaintiff could "be up and
about for at least 2 hours in a six hour day" (R. at 941); the
ALJ stated that Dr. Chernoff testified that plaintiff could
remain up and about for at least 2 hours of an 8 hour workday (R.
at 40).  On April 23, 1991, Dr. Berner opined that plaintiff
could stand and/or walk for 6 hours in an 8 hour workday (R. at
458, 464).  On July 5, 2001, Dr. Stockwell offered a similar
opinion (R. at 575, 581).  The ALJ indicated that he gave
"considerable weight" to the opinions of Dr. Berner and Dr.

Stockwell (R. at 49).  However, the ALJ offered no explanation
for stating in his RFC findings that plaintiff could stand and/or
walk for at least 2-4 hours" in light of the conflicting medical
opinions to which he gave significant and considerable weight (R.
at 50).

The ALJ also included in plaintiff's RFC that plaintiff is
capable of standing and walking for at least 15-20 minutes at a
time (R. at 50).  The only medical opinion supporting this
finding was that of Dr. Katta, who opined that plaintiff could
stand or walk for 15 minutes at a time (R. at 656).  However, the
ALJ stated that he gave "very limited weight" and "very little
weight" to the opinions of Dr. Katta (R. at 47).  Thus, the court
has no idea why the ALJ included in plaintiff's RFC that
plaintiff could stand and walk for at least 15-20 minutes at a
time and at least 2-4 hours in a workday.  It is not at all clear
what weight the ALJ accorded to any of these medical opinions in
making his RFC findings.

The ALJ further stated that he gave "significant weight" to
the opinions of Dr. Bergmann-Harms regarding her multiple
findings of "not significantly limited" to no more than
"moderate" functional limitations, but gave little weight to her
opinion that such functional limitations yield a mental residual
functional capacity that precludes even routine, simple, work-
related mental activities (R. at 49).  Dr. Bergmann-Harms found

18

that plaintiff had moderate limitations in the general category
of difficulties in maintaining concentration, persistence and
pace (R. at 789).  In the mental RFC assessment, which includes
20 categories, Dr. Bergmann-Harms found that plaintiff was
moderately limited in 9 categories, and not significantly limited
in 11 categories (R. at 796-797).  Of the 20 categories, 8 of
them (## 4-11) fall under the category of "sustained
concentration and persistence" (R. at 796-797).  Of these 8
categories, Dr. Bergmann-Harms found that plaintiff was
moderately limited in 4 of the 8 categories.  However, in his RFC
findings, the ALJ offered no explanation for not including nearly
all of these moderate limitations opined by Dr. Bergmann-Harms,
including the 4 moderate limitations regarding sustained
concentration and persistence, despite giving "significant
weight" to her opinions regarding functional limitations.  The
ALJ also gave "great weight" to the opinions of Dr. Golon (R. at
48), who opined in his testimony that plaintiff had moderate
limitations in persistence and pace (R. at 996).  However, the
ALJ offered no explanation for not including any moderate
limitations in plaintiff's RFC in any areas pertaining to
concentration, persistence or pace.

     The significance of moderate limitations was illustrated by
the testimony of the vocational expert (VE) at the hearing on
February 8, 2006.  At the hearing the VE was asked whether a

person with moderate limitations in concentration, persistence or pace would affect his opinion that plaintiff could perform certain jobs given the RFC provided by the ALJ.  The VE responded that plaintiff, with moderate limitations in concentration, persistence, or pace, would not be able to perform the jobs that he had identified in his testimony (R. at 1005-1006).  Therefore, this case shall be remanded in order for the ALJ to comply with SSR 96-8p.

**V.  Did the ALJ err in his analysis of the opinions of Ms. Noll, a treating advanced registered nurse practitioner (ARNP)?**

The ALJ provided the following discussion of the opinions of ARNP (advanced registered nurse practitioner) Noll:

> The Administrative Law Judge also finds
> controlling weight may not be accorded the
> January 2004 questionnaire responses provided
> by CeCe Noll, ARNP-C, which were subsequently
> endorsed by John Eplee, M.D., in June 2005
> (Exhibits 54F and 68F/pp. 2-5); or the
> conclusory statements in a February 2004
> letter endorsed by the nurse practitioner and
> a social worker that claimant's mental health
> issues "prevent him from obtaining and
> maintaining employment at this time." The
> undersigned initially notes the conclusory
> February 2004 statements involve an issue
> specifically reserved to the Commissioner and
> may not be accorded controlling weight.
> Further, 20 CFR § 404.1513 and 416.913 direct
> that certified nurse practitioners and social
> workers are not "acceptable medical sources"
> and such also precludes controlling weight.
> Moreover, the nurse practitioner's January
> 2004 questionnaire responses were provided
> only after her first 2 encounters with
> claimant. Consistent with the assessments

provided by Dr. Golon at the hearing, the
mental status findings from the December 2003
encounter with the nurse practitioner, which
is the 2nd encounter with claimant (the first
being an September 2003 encounter performed
at the McLouth Medical Clinic reflected at
Exhibit 53F/3), reveals essentially normal
mental status findings, except for some
evidence of depression; and the
Administrative Law Judge finds such findings
are widely inconsistent with the multiple
"marked" functional limitations assessed in
nearly every evaluated area on the
questionnaire. Moreover, the nurse
practitioner's January 2004 questionnaire
assessments greatly conflict with her
subsequent assignments of GAF scores of
55-60, indicative of no more than only
moderate to essentially borderline mild
symptoms or limitation of functioning
(Diagnostic and Statistical Manual of Mental
Disorders, 4th edition, 1998, American
Psychiatric Association). Further, the nurse
practitioner's extreme assessments and
statements greatly conflict not only with the
objective and clinical findings, diagnostic
assessments, and medical opinion provided by
Dr. Barnett in June 2005, who is a licensed
psychologist, qualified mental healthcare
specialist, and "acceptable medical source"
under the regulations; but also the
assessments and medical opinions provided by
Dr. Golon, who is a board-certified
psychiatrist and "acceptable medical source"
who retains expertise regarding the
evaluation of mental impairments under the
Listing of Impairments and disability
programs administered by the Social Security
Administration. Although Dr. Eplee endorsed
the nurse practitioner's questionnaire
responses in an affidavit dated in June 2005
(Exhibit 68F/pp. 4-5), the treatment notes
from The Guidance Center and McLouth Medical
Clinic dated during a 2-year period from
March 2003 to March 2005 does not reveal he
had any encounters with claimant during that
time frame; and, even if so, the extreme
responses on the questionnaire again remain

widely inconsistent with the findings and
diagnostic assessments set forth in the
actual contemporaneous mental healthcare
treatment notes of record that reflect
treatment only from December 2003 through
March 2005. At the hearing, claimant's
attorney indicated he would submit updated
mental healthcare treatment notes; however,
no further evidence was received. The
Administrative Law Judge accords little
weight to the extreme questionnaire
assessments and conclusory statements in the
above-cited letter, but great weight to the
clinical findings and diagnostic assessments
contained in the actual mental health care
treatment notes; however, such progress notes
repeatedly indicate claimant retained no more
than moderate to borderline mild depressive
symptoms or limitation of functioning with
significantly improved functioning with
treatment.

(R. at 48).

The court finds numerous errors by the ALJ in his analysis

of the opinions of ARNP Noll.  First, the ALJ discounted her

opinions expressed in January 2004 because they were provided

only after her first 2 encounters with the plaintiff (R. at 48).

However, the February 3, 2004 letter signed by ARNP Noll and

Crystal McComas, plaintiff's therapist states that plaintiff had

participated in "11 individual therapy sessions" since August 4,

2003, and had been treated by Ms. Noll for medication management

in 2 medication appointments (R. at 760).  Furthermore, Dr. Eplee

stated that ARNP Noll works under his supervision and that he had

approved all treatment provided to the patient and concurred with

the opinions of ARNP Noll (R. at 858).  Substantial evidence

indicates that the Guidance Center provided a team approach to plaintiff's mental health care.  Thus, the opinions offered by ARNP Noll, Ms. McComas, and Dr. Eplee reflected clinical judgments of professionals who had interacted with the plaintiff on numerous occasions from 2003-2005.  Shontos v. Barnhart, 328 F.3d 418, 426 (8th Cir. 2003).  Therefore, the ALJ erred by discounting the opinions of ARNP Noll by only mentioning the 2 visits that ARNP Noll had with the plaintiff, and ignoring the team approach to plaintiff's mental health care, including the 11 therapy sessions with Ms. McComas, or the oversight and approval of treatment by Dr. Eplee.

Second, the ALJ discounted the opinion of ARNP Noll because she was not an acceptable medical source (R. at 48).  However, the ALJ failed to recognize her opinions, or that of Ms. McComas as "other" medical sources.  Shontos, 328 F.3d at 426.  Evidence from "other sources," including nurse practitioners, may be based on special knowledge of the individual and may provide insight into the severity of an impairment and how it affects the claimant's ability to function.  Opinions from other medical sources are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.  Depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an

"acceptable medical source" may outweigh the opinion of an
"acceptable medical source," including the medical opinion of a
treating source.  SSR 06-03p, 2006 WL 2329939 at **2,3,5.  SSR
06-03p was published after the ALJ's decision in this case.
While SSR 06-03p is merely a clarification of existing policy and
not a policy change, the ALJ did not have the benefit of the
ruling when he arrived at his decision, and he failed to discuss
how the opinions of ARNP Noll or Ms. McComas should be treated as
opinions from an "other" source.  Furthermore, as the court has
noted, there are numerous errors in the ALJ's analysis of their
opinions.  The court therefore cannot determine whether the
evidence from these treating sources would have led to a
different result had the ALJ assessed it with reference to SSR
06-03p.  Frantz v. Astrue, 509 F.3d 1299, 1301-1302 (10th Cir.
2007).  Therefore, on remand, the ALJ shall consider the opinions
of ARNP Noll and Ms. McComas in light of SSR 06-03p.

    Third, the ALJ found that the treatment notes from ARNP
Noll's second meeting with the plaintiff in December 2003 showed
"essentially normal mental status findings, except for some
evidence of depression"; the ALJ further found that the findings
contained in the notes were "widely inconsistent" with the
multiple marked limitations assessed by ARNP Noll (R. at 48).
The court has reviewed the psychiatric assessment by ARNP Noll
dated December 16, 2003 (R. at 761-762), and does not find

anything in that assessment that is clearly or widely inconsistent with the opinions expressed by ARNP Noll on January 6, 2004; furthermore, the notes do not state that plaintiff had essentially normal mental status findings except for some evidence of depression (R. at 855-856).  ARNP Noll's notes from that date indicate a diagnosis of "major depressive disorder, recurrent" and a GAF of 45 (R. at 762).[3]  The GAF score indicates serious symptoms, including serious impairments in social, occupational and social functioning, which could include the inability to keep a job.  These diagnoses, on their face, are not clearly or widely inconsistent with the opinions of ARNP Noll that plaintiff had numerous moderate and marked limitations.

Fourth, the ALJ asserts that ARNP Noll's January 2004

---

[3]GAF (global assessment of functioning) scores can be found in the Diagnostic and Statistical Manual of Mental Disorders. The scores in this case represent the following:

> 51-60: **Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational or school functioning** (e.g., few friends, conflicts with peers or co-workers).

> 41-50: **Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting), **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job) (emphasis in original).

Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) (4th ed., text revision, American Psychiatric Association 2000 at 34) (emphasis in original).

assessment "greatly conflicts" with her subsequent assignments of GAF scores of 55-60, which is indicative of only moderate symptoms (R. at 48). However, as noted above, just prior to the January 2004 assessment, ARNP Noll gave plaintiff a GAF of only 45. Subsequent GAF assessment on plaintiff ranged from 50-60.[4] An ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability. Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004). The ALJ therefore erred by only mentioning the more favorable GAF scores, but ignoring the lower GAF scores which provide greater support for the opinions of ARNP Noll. For these reasons, the ALJ will be required to give proper consideration to the opinions of ARNP Noll, Ms. McComas, and Dr. Eplee when this case is remanded.

Finally, although the issue of plaintiff's RFC and whether or not they are disabled are issues reserved to the Commissioner, SSR 96-5p, 1996 WL 374183 at *2, SSR 96-5p goes on to state the following:

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source

---

[4]March 9, 2004-GAF 60; April 5, 2004-GAF 50; May 7, 2004-GAF 55; Aug. 19, 2004-GAF 55 (R. at 759, 758, 826, 824).

> for clarification of the reasons for the
> opinion.

1996 WL 374183 at *6.  The ALJ determined that the evidence did
not support the opinions of ARNP Noll, Ms. McComas, and Dr.
Eplee.  Therefore, on remand, the ALJ should consider whether or
not to recontact ARNP Noll, Ms. McComas and/or Dr. Eplee.

## VI.  Did the ALJ err in his findings at step five?

At step five, plaintiff alleges that the ALJ failed to
include in the hypothetical question to the vocational expert
(VE) all of the limitations set forth by the ALJ in his RFC
findings, failed to include other limitations established by the
evidence, and relied on VE testimony that was inconsistent with
the Dictionary of Occupational Title (DOT).  The court will not
discuss these issues in depth because resolution of the errors
previously set forth will likely require new step five findings.
See Robinson v. Barnhart, 366 F.3d 1078, 1085 (2004).  However,
the court will briefly address some of the issues raised in order
to expedite the resolution of this case when it is remanded.

In his decision, the ALJ set forth his RFC findings
regarding the plaintiff (R. at 50-51, 53-54).  However, many of
the limitations contained in the ALJ's RFC findings were not
included in the ALJ's hypothetical question to the vocational
expert at the second hearing on February 8, 2006 (R. at 1005).
Not included in the hypothetical question were the following
limitations included in the RFC findings: (1) is capable of

27

standing and walking for at least 15-20 minutes at a time, (2) can crouch, balance, stoop, climb, crawl, and kneel on an occasional basis, and (3) he is essentially blind in his right eye, and is precluded from job tasks requiring binocular vision. Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Commissioner's decision. Norris v. Apfel, 215 F.3d 1337 (table), 2000 WL 504882 at *5 (10th Cir. Apr. 28, 2000);  Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991).  When this case is remanded, and if it proceeds to step five, the ALJ is directed to relate with precision all of plaintiff's limitations in the hypothetical question posed to the VE.[5]

Plaintiff also asserts that the VE testimony was not consistent with the DOT and failed to comply with SSR 00-4p.  SSR 00-4p states that before relying on VE evidence to support a disability determination or decision, an ALJ must identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by vocational experts and information in the DOT (including its companion publication, the

---

[5]The court would also note that the ALJ relied on the testimony of the VE at the first hearing in finding that plaintiff could perform other jobs in the national economy (R. at 52).  However, the hypothetical question posed to the VE at the first hearing (R. at 949) does not match with precision the RFC findings of the ALJ in his second decision (R. at 50-51, 53-54).

Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO)) and explain in the decision how any conflict that has been identified was resolved. 2000 WL 1898704 at *1.  In making disability determinations, defendant will rely primarily on the DOT for information about the requirements of work.  Occupational evidence provided by a VE should be consistent with the occupational information supplied by the DOT.  When there is an apparent unresolved conflict between the VE evidence and the DOT, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE evidence to support a decision about whether a claimant is disabled.  At the hearing level, as part of the ALJ's duty to fully develop the record, the ALJ will inquire, on the record, as to whether or not there is such consistency.  If a conflict exists, the ALJ must resolve the conflict by determining if the explanation given by the VE is reasonable and provides a basis for relying on the VE testimony rather than on the DOT information.  2000 WL 1898704 at *2.  On remand, the ALJ must comply with SSR 00-4p.

      IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

      Copies of this recommendation and report shall be provided

to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on October 21, 2008.

s/John Thomas Reid
JOHN THOMAS REID
United States Magistrate Judge